**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ZHONGWEI QUI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      25 C 15028 |
| | ) |
| THE PARTNERSHIPS and | ) |
| UNINCORPORATION ASSOCIATIONS | ) |
| IDENTIFIED ON SCHEDULE "A", | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

This action arises under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the Illinois Uniform Deceptive Trade Practices Act, 810 ILCS 510/1 *et seq.* Plaintiff alleges ownership of the federally registered trademark 7,905,928 for the phrase "POSITIVE MOO" (the "Mark"). Plaintiff alleges that Defendants OkiyiD and Shuyu-Trading have willfully infringed the Mark by advertising and selling counterfeit goods bearing the Mark through online marketplace accounts. Plaintiff seeks recovery of control over the Mark, statutory damages for willful infringement, and injunctive relief. Before the Court is Plaintiff's motion for a preliminary injunction.

## <u>BACKGROUND</u>

The Mark was registered with the USPTO on August 19, 2025. The registration covers, *inter alia*, "Dolls; Plush dolls; Plush toys; Rag dolls; Stuffed toy animals;

Stuffed toys; Toy animals; Toy figures; Toy for pets" in International Class 28 and confers upon Plaintiff the exclusive right to use the Mark nationwide in connection with those goods. Plaintiff uses the POSITIVE MOO Mark on product tags, labels, packaging, and online product listings for dolls, plush toys, and stuffed toy animals (the "POSITIVE MOO Products"). Plaintiff primarily sells the POSITIVE MOO Products via his authorized Amazon store, "YUEYUQIU," to consumers throughout the United States. The following is an example of authentic POSITIVE MOO Product:



Dkt. # 1, ¶ 20. According to Plaintiff's federal trademark registration, Plaintiff first used the Mark in commerce at least as early as November 2, 2024.

2

Through the Amazon marketplace, Defendants sell crochet animal dolls with the same inspirational message including the words "POSITIVE MOO," as shown by example below:

 

Dkt. # 33, at 2.

On December 11, 2025, Plaintiff brought claims against Defendants for trademark infringement and counterfeiting, false designation of origin and unfair competition, and deceptive trade practices. On December 22, 2025, the Court granted Plaintiff an *ex parte* temporary restraining order ("TRO") which, among other relief, restrained Defendants' assets. Plaintiff now moves for the entry of a preliminary injunction, seeking substantially identical relief. Defendants, unsurprisingly, object.

In opposing Plaintiff's motion, Defendants submitted screenshot evidence that a third-party seller, PDB Cards, sold products bearing a POSITIVE MOO mark on Etsy since at least October 17, 2024, before Plaintiff's stated first use in commerce date of November 2, 2024. Defendants provide the following image as evidence:

3



Dkt. # 33, at 6. Defendants say this evidence means Plaintiff fraudulently obtained the federal registration from the USPTO, which in turn means Plaintiff will be unable to prevail on his infringement claims and a preliminary injunction should not be issued.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy [that is] never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). Parties seeking such relief must show (1) they have some likelihood of success on the merits; (2) there is no adequate remedy at law; and (3) they will suffer irreparable harm if the court denies relief. *Ty, Inc. v. Jones Grp.*, 237 F.3d 891, 895 (7th Cir. 2001); *see also GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). "If the plaintiff makes this showing, the court weighs the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). "This balancing process involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

Where appropriate, this balancing process should also include considering the public interest, *i.e.*, "any effects that granting or denying the preliminary injunction would have on nonparties." *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021) (quotation marks omitted).

## DISCUSSION

### I.      Likelihood of Success

To demonstrate a likelihood of success on the merits, "a possibility of success is not enough" and "[n]either is a better than negligible chance." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Although the moving party "need not show that it definitely will win the case," a "strong showing" of a likelihood of success on the merits "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* This does not require the moving party to show that they will prevail by a preponderance of the evidence, however, because "that would spill too far into the ultimate merits for something designed to protect both the parties and the process while the case is pending." *Id.* at 763; *see also Ty*, 237 F.3d at 902 (affirming grant of a preliminary injunction where the plaintiff had "about a 50–50 chance of likelihood of success on the merits").

Here, Plaintiff must demonstrate that he is likely to succeed in establishing (1) an ownership interest in a valid, protectible mark and (2) a likelihood of confusion caused

by Defendants' infringement.[1]  *Phoenix Ent., LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016).

Defendants make two primary arguments against a finding in favor of Plaintiff on the first factor.  First, Defendants contend that a third party used the phrase POSITIVE MOO to sell toy cow products before Plaintiff's claimed date of first use of the Mark in commerce.  Second, by failing to inform the USPTO of that third party's use of POSITIVE MOO, Plaintiff fraudulently obtained the asserted trademark.  "Therefore," Defendants say, "Plaintiff cannot establish a reasonable likelihood of success on the merits in light of the preexisting public use of the mark and the fraudulent registration thereafter."  Dkt. # 33, at 2.

"In determining whether a party has established rights in a trademark, we take into account all relevant facts."  *S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 666 (7th Cir. 2016).  A registered mark is "*prima facie* evidence of the validity of the . . . mark . . . and of the registrant's exclusive right to use the mark in commerce." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (quoting 15 U.S.C. § 1057(b)).  However, "[t]he party who first uses a mark in commerce is said to have

---

[1] Plaintiff must show the same elements for his trademark infringement, false designation of origin, and deceptive trade practices claims.  *See Phoenix Ent.*, 829 F.3d at 822 (analyzing trademark infringement and false designation of origin claims together); *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 523 (7th Cir. 2012) (IUDTPA is "a statute generally thought indistinguishable from the Lanham Act except of course in its geographical scope"); *Monster Energy Co. v. Zheng Peng*, 2017 WL 4772769, at *3 (N.D. Ill. 2017) (false designation of origin and IUDTPA claims "involve the same elements").

6

priority over other users." *RGB Plastic, LLC v. First Pack, LLC*, 184 F. Supp. 3d 649, 670 (N.D. Ill. 2016).

Tellingly, Defendants do not contend they are innocent of the accused infringement. Rather, they argue Plaintiff cannot prevail on his claim because the online seller PDB Cards was the first user of POSITIVE MOO and thus has superior rights—what the law calls a *jus tertii* defense. *See Lapinee Trade, Inc. v. Paleewong Trading Co.*, 687 F. Supp. 1262, 1264 (N.D. Ill. 1988). But "a defendant cannot defend a trademark infringement claim on the theory that the plaintiff's rights to the mark may be junior to the rights of some third person." *Flotec, Inc. v. S. Research*, 16 F. Supp. 2d 992, 1011 (S.D. Ind. 1998). Professor McCarthy explains the reasons for this well:

> As a matter of policy, *jus tertii* should not be allowed as a defense in any trademark case. So long as plaintiff proves rights superior to defendant, that is enough. Defendant is no less an infringer because it is brought to account by a plaintiff whose rights may or may not be superior to the whole world. The plaintiff's speculative dispute with a third party does not concern the defendant. To permit a *jus tertii* defense would be unwise judicial policy because it would expand many trademark disputes far beyond a mere two-party conflict.

4 McCarthy on Trademarks and Unfair Competition § 31:160 (5th ed.). As succinctly stated in *Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, "[t]he conflict here is between petitioner and respondent and not between petitioner and the world." 737 F.2d 1576, 1581 (Fed. Cir. 1984).

The Court agrees with Plaintiff that Defendants' screenshot evidence is insufficient to overcome Plaintiff's registration. The screenshots are unauthenticated,

do not establish continuous use, do not establish the geographic scope of any alleged common-law rights, and do not show that any alleged third-party rights would defeat Plaintiff's likelihood of success on his infringement claims.

Defendants next argue Plaintiff fraudulently obtained the trademark registration. Defendants assert that Plaintiff cannot "credibly" argue that he independently created the phrase POSITIVE MOO and launched his own products bearing the Mark less than a month after PCB Cards launched its own products on the Etsy platform. "That would be far too convenient," Defendants say. Dkt. # 33, at 8.

To establish fraudulent procurement, Defendants must demonstrate that Plaintiff "deliberately attempted to mislead the [USPTO] by presenting materially false and misleading information when . . . appl[ying] for the[ ] trademark registration." *Slep-Tone Ent. Corp. v. Kalamata*, 75 F. Supp. 3d 898, 903 (N.D. Ill. 2014); *accord Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982). "A claim for fraudulent procurement of a trademark requires (1) [a] false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance." *Slep-Tone*, 75 F. Supp. 3d at 903, *see also* 6 McCarthy on Trademarks § 31:61. Finally, "[t]he very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be

8

resolved against the charging party." *Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F. Supp. 3d 891, 906 (N.D. Ill. 2019) (quoting *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)).

Defendants have not met this high burden. Defendants fail to demonstrate that Plaintiff made an intentionally false statement in his registration application. Defendants have not supplied any evidence that Plaintiff was aware of the Etsy product, and the screenshots fall far short of demonstrating fraud.

Lastly, Defendants argue that POSITIVE MOO fails to function as a trademark. They contend that the use of the words POSITIVE MOO on the specimen Plaintiff presented to the USPTO was merely ornamental or decorative—POSITIVE MOO was not used to indicate the source of Plaintiff's goods and is unaccompanied by the traditional trademark indicia. Defendants say that Plaintiff's brand is registered with Amazon as YUEYUQUI, and that's what indicates the source of the products, not POSITIVE MOO. Plaintiff responds, correctly, that a product can bear multiple marks with each performing a source-identifying function, and therefore the presence of YUEYUQUI as a brand identifier does not preclude POSITIVE MOO from functioning as a source identifier for the product line.

Words or phrases function as trademarks "when [they are] used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." *Sorensen*, 792 F.3d at 722–23 (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*,

9

978 F.2d 947, 953 (7th Cir. 1992)). "Product packaging can include more than one source indicator." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 596 (7th Cir. 2019). Plaintiff argues that Defendants' own listings prominently and consistently use the term POSITIVE MOO in titles and descriptions to attract customers, thereby demonstrating that they "recognize the mark's source-identifying power and commercial value." Dkt. # 35, at 5. The Court tends to agree. And Defendants themselves admit that POSITIVE MOO is a "distinctive term," Dkt. # 33, at 8, and that the Mark "is quite unique," *id.* at 9.

The Court finds that Plaintiff is likely to succeed in establishing ownership of a valid trademark by virtue his registration and use in commerce of the Mark, even in view of Defendants' arguments concerning prior use and fraudulent procurement.

Once a trademark owner establishes a protectable mark, seven factors govern whether the defendant's competing mark likely will cause confusion among consumers: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). "No one factor is dispositive," *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 425 (7th Cir. 2019), and the plaintiff need not prove each factor or actual confusion to prevail, *Libman Co. v. Vining Indus.*, 69 F.3d 1360, 1365 (7th Cir. 1995). The "similarity of the marks, the

10

defendant's intent, and actual confusion" are simply the "most important" factors. *Uncommon*, 926 F.3d at 425.

Defendants do not engage in an analysis of any of the likelihood of confusion factors, thereby tacitly conceding the factors weigh in Plaintiff's favor at this stage. And the Court agrees with Plaintiff that they do. The products are quite similar in appearance, use POSITIVE MOO, and are available on Amazon. The lower price of Defendants' products suggest consumers will exercise less care. *See Uncommon*, 926 F.3d at 426 ("if a product is widely accessible and inexpensive it follows that consumers will exercise little care in discriminating among product makers."). The intent of Defendants to "palm off" their products as Plaintiff's is plainly evident from Defendants' use of the same type of crochet animal combined with POSITIVE MOO in a similar font and the same inspirational quote.

The Court is satisfied that Plaintiff has met his burden demonstrating a likelihood of success on the merits of his infringement claims.

## II. Irreparable Harm and Inadequate Remedy at Law

"These two requirements—irreparable harm and no adequate remedy at law— tend to merge." *Holbrook Mfg. LLC v. Rhyno Mfg. Inc.*, 497 F.Supp.3d 319, 332 (N.D. Ill. 2020) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). "Harm is irreparable if legal remedies are inadequate to cure it," meaning "the remedy must be seriously deficient as compared to the harm suffered." *Life Spine*, 8 F.4th at 545 (quoting *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)).

When a plaintiff moves for a preliminary injunction based on a claim for trademark infringement under the Lanham Act, the plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding . . . of likelihood of success on the merits." 15 U.S.C. § 1116(a); *see also Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013) ("[I]rreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial)."); *SBA-TLC, LLC v. Merlin Corp.*, 2015 WL 6955493, at *2 (N.D. Ill. 2015) ("Trademark cases are particularly likely to result in irreparable harm because it is so difficult to monetize the likely effect on the brand of a given period of customer confusion. . . . Indeed, the Seventh Circuit presumes irreparable harm in trademark and trade dress infringement cases.").

Here, Plaintiff is entitled to a presumption of irreparable harm because he has demonstrated a likelihood of success on the merits of his trademark infringement claim. Additionally, Plaintiff argues that, absent an injunction, he faces "the permanent erosion of his brand's goodwill and the potential for his intellectual property to be rendered worthless by an influx of inferior counterfeits." Dkt. # 7-3, at 7. The Seventh Circuit has "repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (collecting cases).

Indeed, the "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Id.*

Defendants do not challenge Plaintiff's claim of irreparable harm, thereby waiving any argument against it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). The Court finds that Plaintiff has established a likelihood of irreparable harm for which there is no adequate remedy at law.

### III. Balancing of the Harms and Equities

The balance of the harms weighs in Plaintiff's favor. The integrity of Plaintiff's brand will be damaged if Defendants continue to sell products using the Mark. Defendants, on the other hand, have made no attempt to quantify how much revenue they would lose if the Court issues the preliminary injunction. In any event, an injunction in Plaintiff's favor "means only that the Court enjoins [Defendants] from conducting business that allegedly violates federal [trademark] law. *JH v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2025 WL 1262503, at \*5 (N.D. Ill. 2025) (citing *CSC Holdings, Inc. v. Greenleaf Elecs. Inc.*, 2000 WL 715601, at \*7 (N.D. Ill. 2000) (holding that the balance of hardships leans strongly towards the plaintiff's request for a preliminary injunction because the defendant's argued hardships stem from "conducting a business that is prohibited by federal law" and "[s]uch illegal activities are not worthy of any protection")).

13

The balance of equities "involves considering the public interest and effects of the preliminary injunction on 'people and institutions that are not parties to the case.'" *Madden v. Amazon Servs., LLC*, 2023 WL 8827977, at *10 (N.D. Ill. 2023) (quoting *Cassell*, 990 F.3d at 545). Defendants dedicate a single sentence in their Response to the public interest factor, asserting that this factor weighs against imposing an injunction "as the public interest is generally served by enforcing valid trademarks, but not enforcing trademarks that are likely invalid." Dkt. # 33, at 12. Yet, as detailed above, the Court has concluded that Plaintiff has demonstrated a likelihood of success on his trademark infringement claim. Furthermore, "[t]he public also has an interest in ensuring that those whose trademark registrations are reviewed and approved by the USPTO receive the protection that registration confers. [Plaintiff] applied for and registered his mark, while [Defendants] failed to contest this registration." *Zhang v. UAB Ekomlita*, 2023 WL 2867798, at *13 (N.D. Ill. 2023).

## IV. Asset Restraint

Plaintiff asks for a continuation of the asset restraint previously ordered in the TRO. Plaintiff claims that Defendants OkiyiD and Shuyu-Trading have generated infringing sales of $298,315.90 and $17,341.33, respectively, based on the "sales data analyzed in connection with this litigation." Dkt. # 27-1, ¶ 8. Defendants do not dispute these amounts. Instead, Defendants argue that maintaining[2] an asset restraint "while

---

[2] It is unclear if Defendants' assets remain frozen; the TRO expired on January 19, 2026. *See* Dkt. # 16. Defendants say nearly $80,000 has been restrained to date. Dkt. # 33, at 11.

such questions loom over the mark's validity would be grossly unfair." Dkt. # 33, at 11.

District courts "generally do *not* have the authority to preliminarily restrain assets where a plaintiff seeks a money judgment." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2013 WL 12314399, at *2 (N.D. Ill. 2013) (internal citations omitted) (emphasis in original). An exception to the rule applies where a plaintiff seeks an equitable remedy in relation to that monetary judgment, such as an accounting of profits. *Id.* Plaintiff argues that because he seeks an accounting of Defendants' profits under 15 U.S.C. § 1117(a), the asset freeze is necessary to prevent Defendants, who are foreign entities, from transferring funds to accounts beyond the Court's reach. "[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief." *Deckers*, 2013 WL 12314399, at *2.

Here, the amount of profits from the sale of the allegedly infringing products is known and not disputed by Defendants. An asset freeze in the amounts of $298,315.90 and $17,341.33 is thus appropriate. *See id.* The Court is willing to revisit the issue, however, provided that Defendants come forward with sufficient documentary proof that Plaintiff's numbers are incorrect and their accounts contain no proceeds from their counterfeiting activities. *See Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) ("To exempt assets from an asset freeze, the burden is on the party

15

seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." (cleaned up)).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction [27] is granted. Plaintiff shall submit a proposed order by 3/23/2026. On 3/30/2026, the parties shall submit a joint status report addressing the progress of discovery with a proposed discovery schedule. The joint status report should also indicate whether settlement is a realistic possibility and, if so, next steps in that regard. If settlement is not yet realistic, the report should state what needs to happen before the parties realistically can evaluate the possibility of settlement.

It is so ordered.

Charles P. Kocoras
United States District Judge

Dated: 3/18/2026

16